[Civ. No. 2977.   Fourth Dist.   Mar. 9, 1943.]

THE PEOPLE, Respondent, v. MARY MARSICANO, Appellant.

Charles A. Christin and T. J. Keegan for Appellant.

C. C. Carleton, C. R. Montgomery, Robert E. Reed, Francis J. Carr, Holloway Jones and Lincoln V. Johnson for Respondent.

GRIFFIN, J.—This is a proceeding in eminent domain brought by respondent for the purpose of condemning a claimed interest in the land of appellant. In 1928 respondent, with the view to widening, at some future time, the highway known as Foothill Boulevard, in the town of Cucamonga, in San Bernardino County, sought to acquire a 20-foot strip of land on each side of its highway. Appellant owned the southwest corner property (208 feet by 179 feet) fronting on Foothill Boulevard, at Archibald Avenue. At that time a service station was located near the corner on a part of the property. On a larger part of the property, and outside the 20-foot strip proposed to be taken by respondent, there was constructed a large concrete store and restaurant building. In front of the large building and between the building and the 20-foot strip sought by respondent, there existed a sidewalk, curb and gutter. Between the curb and gutter and the then existing paved street, appellant had constructed a concrete apron which was available as a parking area. Automobiles could drive in from Foothill Boulevard onto appellant's property, and park against the curb on the concrete apron in front of the building. The new right of way line of the highway

extends to within one foot of the curb, but leaves the curb and the 12-foot sidewalk in front of the store and restaurant exactly as they existed before the widening of the highway. On March 10, 1928, appellant agreed to deliver a deed conveying a highway easement over the 20-foot strip of land on which were constructed the parking area as well as the northerly island of pumps attached to the service station. Since respondent on that date was not ready to extend the traveled way of its highway on Foothill Boulevard, it agreed that appellant could have the use and possession of the property so long as respondent did not take possession for highway purposes. Respondent also agreed that, if and when it did take possession for highway purposes, it would remove or replace the improvements located in the 20-foot strip as of the date of the agreement. Respondents filed this condemnation proceeding and took possession for highway purposes on July 26, 1938.

The complaint is the usual complaint in condemnation. It describes the 20-foot strip desired, alleges the claimed fee interest of appellant and the interest of the defendant lessees George and May Klusman, who were tenants of the property under a 25-year lease, and who erected the buildings on the property described. Respondent prayed that the court ascertain and assess the value of the right of way, determine the severance damages and benefits, if any, resulting from the construction of the highway improvement proposed, and upon payment of such sums as may be found due, for an order of condemnation of the property, after specifying all the liens and incumbrances of record. The defendant lessees answered, alleged their claimed damages, set up their lease with appellant, and later stipulated with respondent that they have a judgment in the sum of $3,000 for their interest in the land condemned and for all damages of every kind and nature suffered by them. On February 19, 1940, appellant answered and admitted the allegations of respondent's complaint except as to the amount of damages. On February 20, 1940, she filed an amendment to her answer setting up her agreement of March 10, 1928, with respondent. This agreement was in letter form and read in part:

"Department of Public Works,

.    .    .    .    .    .    .    .    .

"Please be advised that State Highway deeds covering the following described property . . . (20-foot strip) have been

594

properly executed and the same have been delivered to Mercantile Trust Co., . . . with instructions to deliver said deeds to you upon your marginal approval and return of this letter.

"It is, however, understood that so long as the State of California does not take possession of and use the *said property* for highway purposes, the undersigned shall be allowed to use and enjoy the surface of *said property* in the same manner and for the same purposes as the *said property* has heretofore and now is used by the undersigned.

"Any improvements other than those already on *said property* which may hereafter be placed thereon are at owners risk and without expectation of damages or financial gain in event of removal by the State of California.

"It is also understood that if and when the State of California shall take possession of and use *said property* for highway purposes it, the State of California, shall remove or replace, . . . all *improvements* existing on the date of this letter, and will remove or replace said *improvements* to a location that will be clear of the State Highway right of way described in the above mentioned State Highway deeds . . . (Italics ours). (Signed) "MARY MARSICANO.

"Approved:
"State of California
"Department of Public Works . . ."

On the trial there was received in evidence a deed, executed on April 23, 1930, by appellant to the state. It recited that in consideration of one dollar "and the benefits to accrue to her by reason of the location and establishment of the state highway upon, over and across said lands, she does hereby signify her approval of and consent to the location, establishment and construction of said state highway and she does . . . hereby grant . . . to the State . . . the right of way and incidents thereto for said state highway upon, over and across her said lands, hereinafter described, . . . And she, *the said grantor, does hereby waive all claim for any and all damages or compensation for and on account of the location, establishment and construction of said state highway; . . . "* (Italics ours.) The concrete parking strip, a portion of the service station, and three pumps, were the only improvements in the 20-foot strip. They have been removed or moved in accordance with the contract. Inasmuch as appellant had leased the property to third parties (Klusmans) a stipulation

was made with the third parties regarding the details of the moving. Respondent did not actually replace the parking area, but deposited the cost thereof in court. This was done because the tenants who were in possession desired the matter to be handled that way. It was covered in the stipulation above referred to. The amount deposited covered the cost of substituting a new parking area of equal size on an equally usable portion of the remaining property. The court apparently held that the agreement had been fully complied with and entered the judgment and final order of condemnation on June 8, 1940.

Appellant contends that the contract of March 10, 1928, requires the moving, as a unit, of the large concrete building, together with sidewalk, curb, and gutter, away from the new right of way line a distance of 20 feet; or, if moving the entire building be more costly, then that the contract would permit the cutting off of 20 feet from the front of the building and adding 20 feet to the back of it, including, of course, the construction of a new front and the removal of the existing rear wall, and so constructed that the parking area would be in front of the building instead of alongside of it. The cost of either method would exceed $8,000. In other words, appellant asked the court to so construe the 1928 agreement as to require the moving of a $20,000 building for the sole purpose of vacating an area in front of the building for parking purposes. Respondent's contention, on the other hand, is that since the service station has been moved, and since respondent has agreed to replace the parking area in a new location available at the side of the store and restaurant building, it has performed its entire obligation under the 1928 contract, and that the judgment of the trial court, which decreed that appellant has no further interest in the land sought to be condemned, is correct and should be affirmed.

The true issue in this appeal is whether the trial court gave a reasonable interpretation to the contract of March 10, 1928, and whether it, as contended by appellant, erroneously failed to find on a material issue, i. e., whether, under the terms of the contract, respondent was bound to move the stone store building back 20 feet or cut 20 feet from the front of the building and add 20 feet to the back of it so as to provide an additional parking space of 20 feet in front thereof, or whether appellant, for failure of respondent to

remove it as pleaded in the amended answer, was entitled to the cost of removing the building as damages.

The record discloses that during the trial respondent, through its counsel, Mr. Johnson, offered to stipulate with Mr. Christin, counsel for appellant, to certain things. The testimony in this respect was as follows:

"MR. JOHNSON. Now, I might say, also, Mr. Christin, that the state is willing under the if and when agreement which is in evidence as Plaintiff's Exhibit 1, to move and relocate the gas station, a portion of which extends within the area being condemned and to defray the cost of that so as to set that gas station up anew so it will operate in substantially the same condition after the removal as that operated before, the cost of which we have found to be $880.

"Now, we are also willing to replace on the west side of the store building, what will be the equivalent of the paved parking area in front of the two rights-of-way lines and to pave or surface the portion lying westerly of the store building on the leased premises to give the lessee either the same or more parking space than he now has in front of the building and to defray the cost of that which we have found will approximate $691. . . .

"MR. CHRISTIN. And Mr. Johnson, I take it from your offer that the state is not prepared at this time to offer to replace the concrete apron which we just referred to by moving it back 20 feet so that there would be twenty feet of apron in front of the building.

"MR. JOHNSON. No. We would be unwilling to stipulate to that.

"MR. CHRISTIN. I was asking that for the record . . .

"MR. JOHNSON. I will also introduce in evidence as Plaintiff's Exhibit No. 4 a copy of the deed from Mary Marsicano to the state.

"MR. CHRISTIN. So stipulated.

"THE COURT. Admitted."

After respondent rested appellant produced evidence that the cost of setting the store building back twenty feet would be $9,000. The trial court found that both oral and documentary evidence was introduced on the issues; that upon the pleadings and oral stipulations entered into in open court and from the evidence introduced that the use for which the parcel of land was sought was necessary for a public use;

that the allegations of plaintiff's complaint were true; that the allegations in the answer of appellant and the amendment thereto as to the value of the property sought to be condemned were untrue; that appellant, on April 23, 1930, "sold, assigned and transferred by deed to the plaintiff all of her right, title and interest in and to the parcel of land described . . . in the complaint . . . on July 26, 1938, said defendant had no interest in said parcel. . . ." As a conclusion of law it stated that plaintiff was entitled to a decree condemning whatever alleged right, title and interest remained vested in appellant, and that she was not entitled "to any compensation for the alleged right, title or interest which she claims to have in the aforesaid parcel." These findings were served on appellant on May 21, 1941. On June 4, 1941, judgment was entered accordingly.

The decree recited that appellant was not "entitled to any compensation for the alleged right, title or interest which she claims to have in the aforesaid parcel . . . or to any damages to the lands contiguous to that parcel of land taken for highway purposes.

The appeal from the judgment entered on June 4, 1941, was filed August 22, 1941. The property sought to be condemned was described in the agreement as the 20-foot strip. It is to be remembered that the building, sidewalk, curb and gutter are all outside of the 20-foot strip acquired by respondent. The agreement provided, and could only be reasonably construed by any court to mean that any improvements other than those already on *said property* (20-foot strip) were to be erected at the owner's risk and without expectation of damages in the event of removal; that if and when the state should take possession of and use "said property" (20-foot strip), the state should remove or replace, as of that date, all improvements existing (on said property) and to a location clear of the highway right of way. The use of the words "said property" in the agreement clearly refers to the 20-foot strip. The use of the word "improvements" must refer to the improvements situated within the 20-foot strip. Certainly, had appellant intended to force respondent to agree to move, or cut off and add to the expensive concrete building outside the right of way area, she would have made such an obligation clear and unequivocal in the letter of March 10, 1928. Sec. 1654 of the Civil Code reads:

"In cases of uncertainty not removed by the preceding

rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party.''

The construction that respondent was not obligated under the agreement to move the store building back 20 feet was the only reasonable one that could be drawn from a consideration of the entire instrument. This construction will not be disturbed by us as a reviewing court. (*Manhattan Beach* v. *Cortelyou*, 10 Cal.2d 653, 660 [76 P.2d 483].) Any other interpretation would seem to violate the plain intent of the language used. The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other, and if the provisions of the contract as a whole are susceptible of an interpretation which will give effect to the mutual lawful intention of the parties as it is thus found to have existed at the time of contracting, the court is bound to give to them that interpretation. (*Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474 [19 P.2d 785] ; sec. 1641 Civ. Code.)

It is apparent from the contract and deed that appellant has waived any right to ''damages or compensation for or on account of the location, establishment and construction of the state highway.'' Appellant cannot now complain if the trial court failed to find on that issue because if a finding were to be made it would of necessity be adverse to appellant. However, such a finding was made. Respondent already had title to the 20-foot strip when the action was filed. In fact, appellant's supplemental answer in effect merely seeks a judgment for damages for failure of the respondent to comply with *appellant's interpretation* of the agreement to remove the stone building. Appellant so argues in her brief when she says: ''Appellant is entitled to her damages for the failure of the State to carry out the terms of the 'if and when' contract of March 10, 1928.'' From the facts found and the facts stipulated to (upon which findings were not necessary) (*Wilson* v. *Mattei*, 84 Cal.App. 567, 572 [258 P. 453]), the trial court apparently concluded that all improvements had been moved from the right of way in accordance with the contract of March 10, 1928, and, at least by inference, found against appellant's claimed construction of the agreement and

resultant damage. ██ The construction of the contract was one of law. (*Gardner* v. *San Gabriel Valley Bank,* 7 Cal.App. 106 [93 P. 900].) Therefore, the findings were not subject to the criticism that they were not responsive to the issues of fact presented by the pleadings in the case. (*City of Alameda* v. *City of Oakland,* 198 Cal 566 [246 P. 69) ; *Chambers* v. *Farnham,* 39 Cal.App. 17 [179 P. 423].)

Respondent argues that neither during the time prior to the signing of the findings nor in her motion for a new trial did appellant object to the findings made by the court and that therefore she cannot raise, for the first time on appeal, an objection to the findings on the ground that they should have been more explicit and certain, citing *Estate of Perry,* 64 Cal.App. 21 [220 P. 321] ; *Moore* v. *Craig,* 5 Cal.App.2d 283 [42 P.2d 647]. Appellant argues in her brief that such objections were made on both occasions. On a motion for diminution of the record it was stipulated that appellant might augment the record by bringing up the record in this respect. No such record has been presented and the time allowed for such diminution has expired. However, in view of the other reasons stated why the judgment must be otherwise affirmed, it will be unnecessary to pass upon that question.

Judgment affirmed.

Barnard, P. J., and Marks. J., concurred.

A petition for a rehearing was denied April 6, 1943.