717 P.2d 64

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Johnny TAYLOR, Defendant-Appellant.**

No. 8416.

Court of Appeals of New Mexico.

Feb. 6, 1986.

Certiorari Denied March 26, 1986.

90

Paul Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals from his conviction of two counts of unlawful distribution of a controlled substance (marijuana), in violation of NMSA 1978, Section 30–31–22 (Repl. Pamp.1980). On appeal, defendant raises three issues: 1) whether the trial court erred in refusing to allow defendant to introduce into evidence a prior misdemeanor conviction of a state's witness, and if so, whether this error deprived defendant of a fair trial; 2) whether the prosecutor's closing argument constituted misconduct by extensively referring to facts outside of the evidence and misstating the law, thereby depriving defendant of a fair trial; and, 3) whether the trial court's restitution order is authorized by the statutory provisions governing victim restitution (NMSA 1978, § 31–17–1 (Repl.Pamp.1981)), or otherwise authorized by law. We affirm defendant's convictions, judgment and sentence, finding

no reversible error in the trial court's evidentiary rulings, no prosecutorial misconduct and that the sentence is authorized by NMSA 1978, Section 31-20-6(E) (Cum. Supp.1985).

## FACTS

The Hobbs Police Department hired Mike Hernandez to work as an undercover agent in November of 1983. Hernandez worked under the supervision of Sergeants Bogle and Scott of the narcotics division of the department. Hernandez' duties included purchasing illegal narcotics and stolen property. He was paid $1,500 per month and was provided with an expense account by the department.

Hernandez testified that he went to defendant's home on the night of November 26, 1983, for the purpose of buying drugs. In response to Hernandez' request for drugs, defendant told Hernandez that he had some "herb" (i.e., marijuana). Defendant then went outside and returned a few minutes later with a bag of marijuana. Hernandez gave defendant $80.00 (which he obtained from his expense account furnished by the department) in exchange for the marijuana.

Mike Bell of the State Crime Lab identified this as the substance that he received from Bogle by registered mail, stated that it tested positively for marijuana, and also testified as to the chain of custody.

Hernandez also testified that he again came in contact with defendant on April 6, 1984. On that date, Hernandez was outside the front of his home when defendant, dressed in a "City shirt," and another man drove up in a City truck. Defendant then asked Hernandez if he was "looking for anything," and Hernandez responded, "yes." Defendant then handed Hernandez a bag of marijuana, and Hernandez gave defendant $100.00 in return.

Following the conclusion of the state's case, defendant took the stand on his own behalf. Defendant denied that he sold marijuana to Hernandez on November 26, 1983, on April 6, 1984, or at any other time. Defendant testified that he knew of no

reason why Hernandez would accuse him of selling marijuana.

Concerning the alleged November transaction, defendant admitted that Hernandez did come to his house looking for marijuana. Defendant stated that he did not provide marijuana for Hernandez, but that Brian Marshall, who was present, offered to "fix [Hernandez] up." Defendant testified that he did not see any marijuana in his house on that date. (On rebuttal, Hernandez testified that he knows Marshall and that Marshall was not present at defendant's house on that date.) Hernandez averred that he did purchase marijuana from Marshall at defendant's house on January 16, 1984.

Concerning the alleged April transaction, defendant denied that he drove a City truck to Hernandez' house on the date in question. Defendant testified that he was home in bed with a toothache on April 6, 1984. Defendant introduced, and had admitted, a sick leave request form from the City (his employer) that was dated April 6, 1984. Stating that he remained home all day on that date, defendant denied that he was driving a City truck or dressed in a City shirt as claimed by Hernandez. Defendant testified that it was against City policy to drive a City vehicle after hours or while on sick leave from work. Hernandez, a former City employee, admitted that he was aware of this City policy.

Defendant also testified as to his athletic achievements in high school (he graduated in 1980). Although he admitted that he has smoked marijuana, defendant denied that he ever did so during an athletic season. Defendant stated that the reason that he abstained during the season was because, "[y]ou couldn't do it. You couldn't breathe."

On re-direct, defendant testified as to his potential future career in athletics (he was offered a football scholarship) that was cut short when his appendix burst, necessitating surgery. He also testified that he had a brother who was on a basketball scholarship to Western New Mexico University.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENDANT TO INTRODUCE INTO EVIDENCE A PRIOR MISDEMEANOR CONVICTION OF A STATE WITNESS, AND, IF SO, WHETHER THIS ERROR DEPRIVED DEFENDANT OF A FAIR TRIAL.

Prior to trial, the state moved to suppress Mr. Hernandez' conviction of misdemeanor possession of marijuana. Defense counsel tendered that Mr. Hernandez had been charged by information with a felony, distribution of marijuana, but had entered a plea bargain with the state in which he pleaded to the lesser included misdemeanor. The state argued that under Rule 609, as interpreted in *State v. Melendrez*, 91 N.M. 259, 572 P.2d 1267 (Ct.App.1977), that a misdemeanor conviction was not admissible to impeach a witness, unless that conviction involved a crime involving truth or veracity. Defense counsel argued that the act and conviction were relevant in the context of the case. This context included the fact that persons having drug convictions are generally not employed in any capacity, and specifically as undercover agents, by the Hobbs Police Department. Since an exception was made for Mr. Hernandez, counsel alleged that the circumstances were relevant. He tendered that if asked, Detectives Bogle and Scott would testify that in their opinion, Mr. Hernandez was not guilty of the offense leading to his plea, and that they hired him with full knowledge of that prior conviction despite the departmental policy against it. Defense counsel argued the act and plea were relevant to the "integrity of the undercover operation" and to the credibility of Mr. Hernandez, had he entered a plea of guilty to an offense which he now claims he did not commit.

The court heard further argument on the motion after the selection of the jury. The state continued to base its argument for exclusion on the *Melendrez* case, and defense counsel argued that although perhaps the conviction was not admissible under that case and Rule 609, it was admissible under Rule 404. He argued that the acceptance of the plea indicated that the Hobbs Police Department had been grooming Mr. Hernandez to work in an undercover capacity, and that the plea went to "plan, preparation, intent and motive" for testifying that Mr. Taylor sold him marijuana. Defense counsel also argued that the conviction was relevant to Mr. Hernandez' qualification to work in an undercover capacity and admitted that the state would be entitled to an instruction limiting the jury's consideration of the prior incident. Defense counsel also argued admissibility under Rule 608, admitting he could not introduce extrinsic evidence of the offense if denied by Mr. Hernandez, and argued admissibility under Rule 404. The court granted the state's motion in limine.

█ On appeal, defendant argues that NMSA 1978, Evid.Rule 609(a)(2) (Repl. Pamp.1983), would allow for the admission into evidence of Hernandez' prior misdemeanor conviction for possession of marijuana. At the motion in limine hearing, however, defense counsel expressly conceded that he was not relying on Evid.Rule 609, as *State v. Melendrez*, 91 N.M. 259, 572 P.2d 1267 (Ct.App.1977), appeared to preclude the admission of this evidence pursuant to that rule. Instead, defense counsel relied on NMSA 1978, Evid.Rules 608(b) and 404(b) (Repl.Pamp.1983), in arguing for admission of the proffered testimony. The court granted the state's motion in limine, prohibiting defendant from making any inquiries whatsoever regarding Hernandez' arrest for distribution of marijuana or subsequent plea to possession of marijuana. Because defense counsel expressly conceded at the motion hearing that Rule 609(a)(2) was inapplicable, defendant is precluded from arguing error on that ground on appeal. *E.g., State v. Lopez*, 84 N.M. 402, 503 P.2d 1180 (Ct.App.1972).

### A. Evidence Rule 608(b).

Evidence Rule 608(b) provides, in pertinent part, that:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness[.]

Defendant, relying on *State v. Worley*, 100 N.M. 720, 676 P.2d 247 (1984), argues that Hernandez' misdemeanor conviction was relevant to his credibility, and, therefore the trial court should have allowed cross-examination into that conviction.

■ Defendant's reliance on Rule 608(b) and *Worley* is misplaced. The trial court did not preclude defendant from inquiring of Hernandez as to whether he had used marijuana in the past. In fact, the court expressly ruled that defendant could make such an inquiry. This was a correct ruling under Rule 608(b). *State v. Wyman*, 96 N.M. 558, 632 P.2d 1196 (Ct.App.1981).

### B. Evidence Rule 404(b).

■ "Rule 404(b) * * * does allow, under certain circumstances, evidence of other crimes, wrongs or acts * * * to prove motive, opportunity, intent[,] preparation, plan, knowledge, identity or absence of mistake or accident." *State v. Ross*, 88 N.M. 1, 3, 536 P.2d 265 (Ct.App.1975). In order to be admissible under Rule 404(b), the court must determine whether the proffered evidence is relevant to a disputed issue other than character, and that its prejudicial effect does not outweigh its probative value. *State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct.App.1981); *see also State v. Fuson*, 91 N.M. 366, 574 P.2d 290 (Ct.App.1978).

■ Evidence that is ordinarily admissible under Rule 404(b) may, nevertheless, be excluded where "collateral in nature" and where its prejudicial effect outweighs its probative value. *Fuson.* In determining the probative value of the proffered evidence, the court should look to the availability of other means of proving the disputed issue and the remoteness in time of the other crime, wrong or act. *Beachum; Fuson.* This is particularly true where the prejudicial effect of the proffered evidence is extreme. *Beachum.* In any event, appellate review is limited to a determination of whether the trial court abused its discretion in denying the admission of permissible evidence under Rule 404(b). *Fuson.*

■ With regard to the purposes for which the evidence was offered against Hernandez, we find no abuse of discretion. The trial court permitted considerable cross-examination of Hernandez by defendant in order to impeach his credibility and to show motive. Defendant attempted to impeach Hernandez' credibility by eliciting admissions that Hernandez had used marijuana in the past; that Hernandez was never supervised by any officer of the department during the course of an actual transaction; that Hernandez did not have to account to the department for his expense account on a daily or frequent basis, and was not required to keep receipts; that no other eyewitnesses corroborated Hernandez' testimony; that Hernandez made somewhat inconsistent statements to the police, to the grand jury and at trial; that Hernandez could not remember dates or other minor details of the two incidents; that Hernandez did not consummate a transaction with defendant the only time he was actually under surveillance by the department; and that Hernandez had been fired from his undercover position because he accidentally shot himself.

The trial court permitted cross-examination of Hernandez by defendant to show improper motive as well. Defendant brought out that Hernandez was paid $1,500 per month as a police informant, in addition to an expense account for items such as gasoline, food and alcoholic beverages for his potential "clients," and drugs; that this money was in addition to his salary as an ordinary full-time employee of a trucking company; that Hernandez had aspirations of one day becoming an officer with the department; and that Hernandez was hired for the purpose of buying drugs from his "friends" and then aiding in their convictions.

Defendant's argument with respect to the veracity and integrity of the Hobbs Police Department is a closer question. However, affirmance on this ground is appropriate for essentially the same reasons discussed above. Defendant was permitted to cross-examine Scott and Bogle in order to determine the veracity and integrity of the undercover operation, notwithstanding the exclusion of evidence of Hernandez' prior conviction.

On cross-examination, defendant elicited that neither Scott nor Bogle (the only officers that dealt with Hernandez) ever actually supervised Hernandez when a transaction was allegedly made; that Bogle and Scott were forced to accept Hernandez' side of the story as true, without any independent corroboration; that no requests for fingerprints on the bags containing the marijuana were made at the crime lab; that no "spot checks" were ever made of Hernandez' expense account to insure accountability; that Hernandez was not required to keep receipts for his expenditures from the account; and that Hernandez was paid $1,500 per month by the department for the purpose of buying drugs from other persons.

The court permitted defendant to attack the veracity and integrity of the undercover operation *through other available means*, even if defendant did not fully explore the permissible limits imposed by the court. Hence, there was no abuse of discretion in excluding the admission of Hernandez' prior conviction. *Beachum; Fuson*. Additionally, the six-year old conviction was remote in time, especially where, as here, neither of the officers who hired and supervised Hernandez were assigned to the narcotics division in 1978. *Beachum*.

The court's ruling did not deny defendant of his right of confrontation. The court's ruling did not prohibit defendant from cross-examining Bogle and Scott as to the policies concerning the hiring of undercover agents; nor did it prohibit defendant from inquiring of Bogle and Scott concerning their opinions as to whether mistakes

had been made in past undercover operations resulting in erroneous arrests and charges. In fact, the court permitted a considerable degree of cross-examination of Bogle, Scott and Hernandez concerning the practices and procedures utilized in the operation that resulted in defendant's arrest. Moreover, the court's ruling did not expressly prohibit defendant from inquiring into the policies, practices or past history of the department's undercover operations, that is, the integrity of undercover operations in general.

## II. WHETHER THE PROSECUTOR'S CLOSING ARGUMENT CONSTITUTED MISCONDUCT BY EXTENSIVELY REFERRING TO FACTS OUTSIDE OF THE EVIDENCE AND MISSTATING THE LAW, THEREBY DEPRIVING DEFENDANT OF A FAIR TRIAL.

Defendant argues that the prosecutor engaged in prejudicial misconduct during closing argument by: (a) referring to facts that were not introduced into evidence at trial; (b) misstating the law concerning the burden of proof in a criminal trial; and (c) that the cumulative impact of these instances of misconduct deprived him of a fair trial.

The prosecution is allowed reasonable latitude in closing argument, and the trial court enjoys a wide discretion in dealing with and controlling closing argument. *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980); *State v. Pace*, 80 N.M. 364, 456 P.2d 197 (1969). However, the prosecutor's remarks must be based on the evidence, *State v. Herrera*, 84 N.M. 46, 499 P.2d 364 (Ct.App.), *cert. denied*, 84 N.M. 37, 499 P.2d 355 (1972); *State v. Santillanes*, 81 N.M. 185, 464 P.2d 915 (Ct.App. 1970), or be properly in response to the defendant's argument. *State v. Montoya*, 95 N.M. 433, 622 P.2d 1053 (Ct.App.1981). Where the defendant "opens the door" to comments by the prosecutor, such comments are invited and do not constitute reversible error, even if such comments are improper. *State v. Cordova*, 100 N.M. 643,

674 P.2d 533 (Ct.App.1983); *State v. Jaramillo*, 88 N.M. 60, 537 P.2d 55 (Ct.App.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975); *State v. Wesson*, 83 N.M. 480, 493 P.2d 965 (Ct.App.1972). The question on appeal is whether improper closing comments by the prosecutor served to deprive defendant of a fair trial. *State v. White*, 101 N.M. 310, 681 P.2d 736 (Ct.App.), *cert. denied*, 101 N.M. 189, 679 P.2d 1287 (1984).

## A. The Professional Athlete and Drug Abuse Comment.

■ Defendant's verbatim recitation of the prosecutor's professional athlete/drug abuse comment during rebuttal argument is accurate, and need not be repeated here. However, comments by defense counsel in opening and at closing, as well as testimony by defendant, must be considered in reviewing the claimed misconduct on appeal. *See State v. Chacon*, 100 N.M. 704, 675 P.2d 1003 (Ct.App.1983) (where reviewing whether improper comment was made in response to defendant's closing argument, context of remark must be considered), *cert. denied*, 100 N.M. 631, 674 P.2d 521 (1984). We conclude that the claimed misconduct does not rise to the level of reversible error for the following reasons.

■ First, as noted by the state, defendant invited the prosecutor's comment. Defense counsel referred to defendant's considerable athletic accomplishments during voir dire, opening statement and closing argument. Defendant also testified that an athlete could not use drugs while training because it would cause breathing problems. Although defense counsel did not specifically refer to this testimony during closing argument, he did raise the matter during opening statement. The prosecutor's comment during rebuttal, although referring to facts outside of the evidence introduced at trial, was invited by defendant, and therefore, is not reversible misconduct. *Cordova; Montoya; Jaramillo; United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

■ Secondly, the prosecutor limited his professional athletes and drugs comment to one instance, as fully described by defendant. Therefore, this case is distinguishable from *State v. Cummings*, 57 N.M. 36, 253 P.2d 321 (1953), *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App. 1974), and *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978), in this regard. The prosecutor's single remark, made in response to implications raised by defendant during closing cannot be said to have so influenced the jury so as to deprive defendant of a fair and impartial trial. *Cf. State v. Garcia*, 57 N.M. 665, 262 P.2d 233 (1953) (distinguishing *Cummings* on this basis); *State v. Vallejos*, 98 N.M. 798, 653 P.2d 174 (Ct.App.1982); *State v. Anaya*, 79 N.M. 43, 439 P.2d 561 (Ct.App.1968) (same).

■ Finally, the trial court overruled defendant's objection on the basis that defendant had invited the prosecutor's comment. Where there is a basis for the comment in the evidence, the exercise of discretion by the trial court in overruling defendant's objection will not be interfered with on appeal. *See Anaya*. Because the prosecutor's comment was based on a reasonable inference drawn from defendant's testimony, even though arguably improper, the trial court did not err in overruling defendant's objection, nor in denying defendant's motion for mistrial.

## B. The Motive For False Accusation Reference.

The prosecutor argued that defendant had failed to show the jury why Hernandez, as well as Bogle and Scott, chose him, of all people in the world, to accuse of having sold marijuana. The prosecutor also argued that defendant had never explained where state's exhibit no. 1 (the November marijuana) came from. Defendant objected at this point and moved for a mistrial. The court denied the motion without stating a basis for its ruling. The prosecutor then argued that defendant's version of the November sale (Marshall sold to Hernandez) was actually a different

transaction for which defendant was not on trial.

■ Counsel may not misstate the law. *State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct.App.1983). The judge alone instructs the jury on the law, and where counsel attempts to instruct, he invades the province of the court. *State v. Payne*, 96 N.M. 347, 630 P.2d 299 (Ct.App.1981). This is true even where counsel's instruction is legally correct. *Id.*

■ Defendant's testimony, and defense counsel's opening statement and closing argument again "opened the door" to the prosecutor's comments. The complained-of comments were isolated to the single instance identified above. The comments were not so pervasive or prejudicial as to deprive defendant of a fair trial. Accordingly, because instructing on the law is not reversible error *per se,* and because defendant invited the complained-of comments, the trial court did not err in denying defendant's motion for mistrial, and this court should affirm on this issue. *Cordova; Payne; Montoya; Jaramillo; Wesson; Anaya.*

### C. Cumulative Misconduct.

■ The doctrine of cumulative error has no application where no errors were committed and where defendant has received a fair trial. *State v. McGuinty*, 97 N.M. 360, 639 P.2d 1214 (Ct.App.1982); *see also State v. Anaya.* For the reasons stated in sub-points A and B above, the prosecutor did not engage in reversible misconduct in any of the complained-of comments. Accordingly, the doctrine of cumulative error has no application here.

### III. WHETHER THE TRIAL COURT'S RESTITUTION ORDER IS AUTHORIZED BY THE STATUTORY PROVISIONS GOVERNING VICTIM RESTITUTION, OR OTHERWISE AUTHORIZED BY LAW.

The trial court partially suspended defendant's concurrent eighteen-month terms of incarceration, ordering defendant to serve a 364-day jail sentence and placing defendant on probation for two years upon his release from the county jail. In addition to the standard terms and conditions of probation, defendant was ordered to pay toward the costs of his probation and to "make restitution in the amount of $180 to the Hobbs Police Department." Both defendant and the state concede that the restitution order was based upon the money paid by Hernandez to defendant in exchange for the marijuana obtained from defendant in November of 1983 and April of 1984, which was the basis upon which defendant was convicted.

■ A court may impose conditions of probation as authorized by law; conditions of probation unauthorized by law are void. *State v. Ayala*, 95 N.M. 464, 623 P.2d 584 (Ct.App.1981). Subject to exceptions not pertinent here, where execution of a sentence is partially suspended, Section 31–17–1(B) mandates that the court order, as a condition of probation, that the defendant make restitution to the victim for actual damages caused by the crime for which conviction was had. *State v. Lack*, 98 N.M. 500, 650 P.2d 22 (Ct.App.), *cert. denied*, 98 N.M. 478, 649 P.2d 1391 (1982). Section 31–17–1 is declarative of the public policy in this jurisdiction to: 1) make whole the victim of the crime to the extent possible; and 2) to remind the defendant of his wrongdoing and to require him to repay the costs society has incurred as a result of his misconduct. *See Lack*, 98 N.M. at 505–06.

■ We need not decide, however, whether restitution is appropriate under Section 31–17–1(A), *see State v. Pettit*, 73 Or.App. 510, 698 P.2d 1049 (1985); restitution in this case was proper under NMSA 1978, Section 31–20–6(F) (Cum.Supp.1985). It is clear that the trial court, at the time of sentencing, is allowed to consider a wide range of options to assure defendant's rehabilitation, and the conditions of probation will not be set aside unless: 1) they have no reasonable relation to the offense for which the defendant was convicted; 2) relate to activity which is not itself criminal

in nature; and, 3) require or forbid conduct which is not reasonably related to deterring future criminality. *State v. Donaldson*, 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983); *State v. Gardner*, 95 N.M. 171, 619 P.2d 847 (Ct.App.1980). The restitution provision challenged here, by requiring the defendant to pay back the money he received as a result of the criminal activity for which he was convicted, meets the standards articulated in *Donaldson* and will not be set aside.

Therefore, defendant's convictions, judgment and sentence, will be affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., and MINZNER, J., concur.